### ROADES v. LARSON.

(Supreme Court, General Term, Fifth Department. January 18, 1893.)

EXCESSIVE DAMAGES—ASSAULT AND BATTERY.

In an action for assault and battery a verdict for $5,000 is excessive, where it cannot be justified except on the ground of the allowance of punitive damages to a large extent, and it appears that plaintiff provoked the assault by taunting and irritating defendant when he knew he was intoxicated and excited by drink.

Appeal from circuit court, Monroe county.

Action by William Roades against Elias T. Larson for assault and battery. From a judgment entered on a verdict for plaintiff, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

Thomas Raines, for appellant.

P. Chamberlain, Jr., for respondent.

LEWIS, J. This action was brought to recover damages sustained by the plaintiff from an assault and battery committed by the defendant on the 15th day of May, 1889. The plaintiff recovered a verdict for $5,000. The parties at the time of the assault were occupying adjoining lots in the city of Rochester. They had so occupied their lots for many years. A bad state of feeling had arisen between the parties a short time before the assault was committed, caused by the defendant having moved upon the rear of his lot, adjoining the plaintiff's land, an old wooden building. The plaintiff charged the defendant with having

moved the building upon the lot in violation of the city ordinances, and a quarrel ensued between the parties. On the day of the assault the plaintiff had entered upon the defendant's lot for the purpose of constructing a curbing around his cellar window. He had asked permission of the defendant to occupy his lot for that purpose, the request was refused, but notwithstanding such refusal the plaintiff entered upon the defendant's lot, and while engaged in the work the defendant ordered him off from his lot. The plaintiff refused to go, and angry and abusive words passed between the parties. About the time the plaintiff had completed the work he walked in between his house and the defendant's house upon defendant's land, and, seeing the defendant sitting in his house by a window, spoke to him in a taunting manner, and told him to come out of the house and remove some barrels and rubbish which were upon the defendant's lot between the two houses, and which so obstructed the way as to make it inconvenient for a person to pass by the rubbish. The defendant was addicted to the use of liquor, and had been drinking for some days immediately prior to the assault, and he was at the time under the influence of liquor, which facts were known to the plaintiff. The plaintiff testified that he requested the defendant to remove the rubbish, not because he cared to have it out of his way. His testimony tended to show that he made the request to irritate and annoy the defendant. The defendant became very angry, and again ordered the plaintiff to leave defendant's premises, and threatened that if he did not do so he would come out and kill him; and he immediately came out of the house, and approached the plaintiff, and struck him upon his head two or three times with a piece of iron pipe. The plaintiff was partially dazed by the blows, but he immediately seized the defendant, forced him back several feet, and pushed him through a window, and the parties were thereupon separated. The plaintiff's testimony tended to show that he was quite seriously injured. The wounds upon his head bled freely. He testified, however, that, finding that his hat was bloody, he immediately after the assault proceeded to wash it. He testified that, while he was not confined to his bed to any great extent in consequence of his injuries, he was for months unable to work, and had from that time down to the time of the trial suffered pain continuously, and that his general health was impaired in consequence of the assault. His physician, Dr. Moore, describing his injuries, said he found four cuts upon his head, varying in length from two to three inches, and extending through the scalp to the skull; that they bled quite freely; that he found the plaintiff pale and excited; that he sewed up the wounds, and at the end of ten days or two weeks he removed the dressings, and the wounds were all healed up. Other witnesses were called by the plaintiff whose testimony tended to show that after the assault the plaintiff was pale, and did not work as he had before he received the injuries. The defendant called a large number of witnesses, who testified that they resided in plaintiff's neighborhood; knew him, and saw him immediately after the assault; that he was around his house and lot the day of the assault with his head bandaged, and was talking to his neighbors, giving them an account of the affray; that from

time to time thereafter they saw him, and that he commenced working, a short time after he was injured, at his business of manufacturing shoes, and seemed quite as well as he did before he was injured. It was undoubtedly an aggravated and serious assault, and was made without any legal, adequate cause; but a careful reading of the evidence has satisfied our minds that the verdict was altogether too large. The facts and circumstances developed on the trial did not justify so large a verdict. The plaintiff knew when he told the defendant to come out and remove the rubbish that he had been drinking for a number of days, and was at the time intoxicated. He knew he was in a condition to be easily irritated, and might, if provoked, do acts that he would not do when sober. The plaintiff's conduct was well calculated to annoy and provoke even a sober man, and much more so one whose brain was excited with liquor. While the defendant's intoxication was not an excuse for the assault, it should have been taken into account by the jury on the question of punitive damages. Punitive damages must have largely entered into the verdict, for certainly plaintiff's actual damages did not warrant so large a verdict. While the amount of damages in such a case is for the decision of the jury, when their verdict is unreasonably and extravagantly large it is the duty of the appellate court to interfere, and set it aside and grant a new trial, unless the plaintiff consent to reduce the verdict to a proper amount. The judgment and order appealed from should be reversed, and a new trial granted, unless the plaintiff stipulates to reduce the damages to the sum of $2,000; and, if the stipulation be so given, the judgment so modified should be affirmed, without costs of this appeal to either party. All concur.